UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:04-CR-00088-SDJ |
| | § | |
| AMER STANLEY (1) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Amer Stanley's Motion for a Downward Departure under FSA, Cares Act, Compassionate Release 3582(c)(1)(A) Due to COVID-19 and Extraordinary and Compelling Reasons. (Dkt. #99). Stanley filed a supplement, (Dkt. #101), and the Government filed a response in opposition, (Dkt. #102). Stanley then filed a reply. (Dkt. #106). The Court, having considered the motion, the subsequent briefing, and the applicable law, **DENIES** the motion.

### I. Background

Stanley is currently serving a 360-month term of imprisonment at MCFP Springfield for possession of a controlled substance with the intent to distribute, in violation of 21 USC § 841(a)(1), and possession of a machine gun in furtherance of a drug-trafficking crime, in violation of 18 USC § 924(c). At the time Stanley filed this compassionate-release motion, he had completed approximately 273 months of his sentence. Stanley has also been disciplined six times while in BOP custody.

Citing risks to his health associated with COVID-19; certain preexisting medical conditions; his rehabilitation; the excessiveness of his initial sentence; and his cooperation with the Government, which allegedly resulted in an assault on him

1

in prison, Stanley requests that the Court reduce his sentence to time served and order him released from prison. Before filing this motion, Stanley submitted three requests to his various wardens requesting compassionate release based on his medical conditions and COVID-19. The wardens did not respond to such requests.

## II. DISCUSSION

### A. 18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984. Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the Bureau of Prisons ("BOP") if the BOP could establish the following conditions: (1) extraordinary and compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)). Instead, Congress

delegated that authority to the Sentencing Commission, directing it to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define "extraordinary and compelling reasons" and promulgated U.S.S.G. § 1B1.13. In application note 1 to Section 1B1.13, the Sentencing Commission described what circumstances constitute "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A)(i). U.S.S.G. § 1B1.13 cmt. n.1. The Sentencing Commission essentially created four categories of "extraordinary and compelling reasons," which can broadly be characterized as: (1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant; (3) issues arising from the defendant's family circumstances; and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case. *Id.* And because Section 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing Commission's policy statements issued pursuant to Section 994(t), the policy statements contained in Section 1B1.13 were binding on district courts considering Section 3582(c)(1)(A)(i) motions. *See United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's policy statements issued pursuant to 28 U.S.C. § 994 are binding on district courts when considering motions brought under 18 U.S.C. § 3582(c)).

In 2018, Congress amended Section 3582(c)(1)(A) with the passage of the First Step Act. The amendment provided that, in cases where the BOP does not file a

3

compassionate-release motion on the prisoner's behalf, the prisoner may personally file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92. This was the First Step Act's only change to the compassionate-release framework. *Id.* at 391. Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, Section 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same. *See id.* at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

Following the First Step Act's expansion of who may file a motion under Section 3582(c)(1)(A), courts were confronted with the question of whether the Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions only could be filed by the BOP, remained binding on district courts when considering compassionate-release motions. The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to Section 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to Section 3582(c)(1)(A) motions filed by prisoners. 993 F.3d at 392.[1] Accordingly, while U.S.S.G. § 1B1.13 dictates the meaning of "extraordinary and compelling reasons" when a Section 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a Section 3582(c)(1)(A) motion is filed by a prisoner himself. *See id.* ("[T]he policy

---

[1] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate-release motions filed by prisoners. *See, e.g., United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). *But see United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all Section 3582(c)(1)(A) motions).

statement continues to govern where it says it governs—on the motion of the Director of the Bureau of Prisons. But it does not govern here—on the newly authorized motion of a prisoner." (quotation omitted)). Therefore, when a prisoner files a compassionate-release motion, courts must determine what constitutes an "extraordinary and compelling reason" under Section 3582(c)(1)(A)(i).

## B. Extraordinary and Compelling Reasons

Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is not wholly irrelevant. Courts should still look to the policy statement for guidance in determining what constitute "extraordinary and compelling reasons" for a sentence reduction when a prisoner files a compassionate-release motion. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see also, e.g.*, *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."). Using the policy statement as guidance when considering prisoner-filed compassionate-release motions is warranted for several reasons.

First, whether a compassionate-release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same. Section 3582(c)(1)(A) provides that its requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). And as noted above, the First Step Act did not change Section 3582(c)(1)(A)'s substantive requirements. Thus, a policy statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions necessarily informs what "extraordinary and compelling" means in the context of defendant-filed motions because the same standard governs both motions. In other words, Section 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern Section 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in Section 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf. *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling this exhaustion requirement would be a nonsensical exercise if the standard governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request. Defendants would request compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests

6

based on the interpretation applicable to its motions. The fact that defendants must first ask the BOP to file their compassionate-release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under Section 3582(c)(1)(A).

Using U.S.S.G. § 1B1.13 and its commentary as guidance to determine what is extraordinary and compelling in defendant-filed motions is further warranted by Congress's mandate that the Sentencing Commission, rather than courts, determine what constitute "extraordinary and compelling reasons" warranting a sentence reduction under Section 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to issue policy statements describing what constitute extraordinary and compelling reasons under Section 3582(c)(1)(A)); *Garcia*, 655 F.3d at 435 (concluding that Congress intended the Sentencing Commission's policy statements to be binding on courts in Section 3582(c) proceedings). To be sure, the Fifth Circuit has held that there is no binding policy statement because the Sentencing Commission has yet to amend its guidelines to account for the fact that defendants can now file compassionate-release motions. *See Shkambi*, 993 F.3d at 392. But Section 1B1.13 and its commentary still provide substantial insight into what the Sentencing Commission considers to be an "extraordinary and compelling reason" because the statutory standard the Sentencing Commission was applying when it promulgated Section 1B1.13 has not changed.

Nor does Section 1B1.13 become useless as guidance for defendant-filed compassionate-release motions simply because its terms state that it applies to

7

motions brought by the Director of the BOP. Section 1B1.13 and its accompanying application notes "provide a working definition of 'extraordinary and compelling reasons'"—the standard that applies equally to BOP motions and prisoner motions. *Gunn*, 980 F.3d at 1180. Indeed, when the Sentencing Commission promulgated Section 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A). 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards governing prisoner motions and standards governing BOP motions. Rather, Section 994(t) directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under Section 3582(c)(1)(A). And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of Section 994(t)'s directive. *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t)."). Because Section 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing Commission's definition of Section 3582(c)(1)(A)'s terms is instructive when considering a prisoner's motion brought under Section 3582(c)(1)(A)(i).

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes. Therefore, any proffered "extraordinary and compelling reason" that is not contained in the Sentencing Commission's policy statement should nonetheless be similar to those reasons in

8

order to warrant release under the statute. In this sense, the Court's analysis of whether Stanley has presented "extraordinary and compelling reasons" warranting the sentence reduction he seeks will be significantly guided, though not strictly bound, by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

### C. Stanley's Motion

Stanley argues that he has underlying medical conditions, specifically obesity, heart damage, a history of smoking, and a progressive neurological disorder, that increase his risk for death if he were to contract COVID-19. *See* (Dkt. #99 at 2). He also argues that compassionate release is appropriate because the BOP is unable to provide proper medical care, he has demonstrated his rehabilitation, his original sentence was excessive, and he cooperated with the Government, which resulted in him being assaulted in prison.

As an initial matter, Stanley's compassionate-release motion may be considered only if he first meets Section 3582(c)(1)(A)'s exhaustion requirement. The statute provides that a court may not consider any modification to a defendant's sentence under Section 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the Director of the BOP or by a defendant who has fully exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A). The Government does not dispute that Stanley has met the exhaustion requirement. As explained in Stanley's motion, (Dkt. #99), and the Government's response (Dkt. #102), Stanley has submitted three requests to the wardens at his facilities and more than thirty days have passed since Stanley's requests to the wardens. *See* (Dkt. #102, pages 2–3); *see*

9

*also* 28 C.F.R. § 571.61 (providing that a prisoner's Section 3582(c)(1)(A) request for compassionate release must be submitted to the warden of his or her facility).

Stanley's requests to the wardens, however, appear to primarily address his medical conditions and COVID-19, but not the other reasons he now presents to the Court: his rehabilitation, the excessiveness of his initial sentence, and his cooperation with the Government, which resulted in his being assaulted in prison. *See* (Dkt. #102); (Dkt. #101-2). As this Court has previously stated, "In order to exhaust [his] administrative remedies, a prisoner must first present to the BOP the *same grounds warranting release* that the prisoner urges in [his] motion." *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (emphasis added). Therefore, the Court will not consider these new reasons for release because Stanley has not satisfied the exhaustion requirement with respect to these arguments.[2]

After reviewing the remaining arguments, the Court concludes that Stanley's motion must be denied because he has failed to present "extraordinary and compelling reasons" within the meaning of Section 3582(c)(1)(A)(i).

Section 1B1.13's application note 1 provides the following two circumstances under which a defendant's medical condition may warrant a sentence reduction:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period)

---

[2] The Court concludes that Stanley's argument regarding the BOP's inability to provide proper medical care for his undiagnosed neurological condition is sufficiently similar to his argument regarding his undiagnosed neurological condition itself, which the Government states was contained in at least Stanley's second and third compassionate-release requests to his warden. *See* (Dkt. #102 at 2–3); (Dkt. #101-2).

   is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—
     (I) suffering from a serious physical or medical condition,
     (II) suffering from a serious functional or cognitive impairment, or
     (III) experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G § 1B1.13 cmt. n.1(A).[3] The Court construes Stanley's motion as making an argument for compassionate release under both subsection (i) and (ii) of application note 1.

As applicable to subsection (i), Stanley argues that he has a "likely ALS diagnosis" that has not been confirmed yet because he is waiting on a muscle biopsy. (Dkt. #106 at 6); (Dkt. #99 at 4, 6). Although ALS is an enumerated example of a "terminal illness" under subsection (i), there is insufficient evidence that Stanley has an ALS diagnosis at this time. As the Government notes, Stanley is classified as Care Level 1: "healthy, simple chronic care." *See* (Dkt. #102 at 3). It is true that Stanley's CK laboratory results have remained high, but he was scheduled to have a muscle biopsy in November 2021. (Dkt. # 102 at 4). In short, the Court sees no basis in the

---

[3] As discussed above, the Court still looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" as significant guidance in construing that phrase as to defendant-filed motions. *See Thompson*, 984 F.3d at 433 (noting that the Sentencing Commission's commentary "informs [the] analysis" as to what constitute "extraordinary and compelling reasons" for defendant-filed compassionate-release motions).

record to conclude that high CK results alone, absent any diagnosis, are evidence of a terminal illness under subsection (i).

Stanley also argues that compassionate release is appropriate because the BOP is unable to provide him with proper medical care. The thrust of this argument is that Stanley has not yet received a diagnosis for his elevated CK results. But the Government has submitted evidence of the treatments Stanley has obtained from the BOP, including numerous tests and consults regarding his claimed medical conditions. And again, Stanley has been referred to a doctor for a muscle biopsy because of his elevated CK results, which was scheduled to take place in November 2021. Thus, the Court concludes that a potential, undiagnosed terminal illness does not constitute an extraordinary or compelling reason that justifies his compassionate release.

Regarding subsection (ii), Stanley maintains that his health conditions place him at a higher risk of death should he contract COVID-19, which he argues has high transmission rates in the Springfield prison and in the state of Missouri. Stanley's assertion that his health conditions place him at a higher risk of death should he contract COVID-19 *in the future*, however, does not comport with the plain text of application note 1 to U.S.S.G. § 1B1.13. Because that application note is written in the present tense, the defendant must be presently suffering from a serious medical condition and such condition must presently diminish the defendant's capacity to engage in self-care in the environment of a correctional facility. Stanley has not made this showing.

Here, Stanley has not argued that the conditions he suffers from diminish his ability to engage in self-care in the prison. To the contrary, Stanley is classified as a generally healthy inmate who requires only "simple, chronic care." What's more, Stanley has received both doses of a vaccine that is highly effective against COVID-19, including variants of the virus. Shaun J. Grannis et al., *Interim Estimates of COVID-19 Vaccine Effectiveness Against COVID-19-Associated Emergency Department or Urgent Care Clinic Encounters and Hospitalizations Among Adults During SARS-CoV-2 B.1.617.2 (Delta) Variant Predominance*, 70 MORBIDITY & MORTALITY WEEKLY REPORT 1291, 1292 (2021). For most prisoners, the availability of a COVID-19 vaccine "makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *see also United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 845–46 (D. Ariz. 2021) (collecting cases explaining that vaccination mitigates the risk from COVID-19 to such an extent that COVID-19, coupled with underlying medical conditions, does not present an extraordinary and compelling reason to grant compassionate release). Accordingly, the Court concludes that Stanley's health conditions, considered alone or in conjunction with the increased risk of complications from COVID-19, do not constitute extraordinary or compelling reasons that warrant compassionate release.

Because the Court concludes that none of Stanley's asserted grounds constitute extraordinary or compelling reasons to justify his compassionate release, Stanley's motion must be denied.[4]

**D. Motions to Seal**

The parties have also moved to seal certain documents filed with the briefing on this motion. *See* (Dkt. #99, #103, #107). Specifically, the Government requests that the Court seal Stanley's medical records. (Dkt. #103). Because the medical records contain extensive sensitive personal information from Stanley's treating physicians, the Court concludes that the records should be sealed. Stanley also requests that the Court seal his compassionate-release motion, the Government's response, his reply to the Government's response, and the supporting exhibits to his motion because they contain his medical information and "evidence" of his "extensive cooperation with the Government." (Dkt. #99, #107). First addressing the exhibits, these appear to contain Stanley's confidential medical records and will be sealed. Further, Stanley's motion, the Government's response, and his reply also discuss his confidential health

---

[4] To the extent Stanley also requests, in the alternative, that the Court order him released to home confinement, such request must also be denied. The BOP has exclusive authority to determine where a prisoner is housed; thus, the Court is without authority to order home confinement. 18 U.S.C. § 3621(b); *see also United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement."); *Zheng Yi Xiao v. La Tuna Fed. Corr. Inst.*, No. 3:19-CV-97, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement." (citing *Moore v. U.S. Att'y. Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971) (per curiam))).

14

information. Thus, the Court concludes that the documents should be filed under seal.

### III. Conclusion

For the foregoing reasons, it is **ORDERED** that Defendant Amer Stanley's Motion for Downward Departure under FSA, Cares Act, Compassionate Release 3582(c)(1)(A) Due to COVID-19, and Extraordinary and Compelling Reasons, (Dkt. #99), is hereby **DENIED**.

It is further **ORDERED** that the Government's motion to seal, (Dkt. #103), and Stanley's motion to seal, (Dkt. #107), are **GRANTED**. Stanley's compassionate-release motion, (Dkt. #99); the Government's response, (Dkt. #102); Stanley's medical records, (Dkt. #104); and Stanley's reply, (Dkt. #106), shall be **SEALED**.

**So ORDERED and SIGNED this 11th day of May, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE